UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| MARK McMANAWAY; DAVID RANCOURT; BRENT LASHER; JODY AISTROP; WILLIAM EARL BICKELL; MATTHEW DALE BOARD; LARRY BUNNER; WILLIAM DeLASHMUTT; JEFFREY FROMME; JEFFERY HENKE; ANTHONY HUFF; BEN MCINTYRE; JEFFREY ALAN VARNER; TOMMY J. EBERT, JR.; LUCAS RAY WHISTLE; MICAH PARTLOW; JURGEN P. TURNER; RUSSELL KIMBERLING; SCOTT WYATT; GARY FISCHL; STEPHEN SALAMONE; RUSSELL GARVIN; DANIEL KRIBS; DAVID BARKER; EDWARD BOSA; STEVE MOORE ON BEHALF OF THE WRONGFUL DEATH ESTATE OF DAVID MOORE; JASON BREEDEN; CLINTON HAMMACK; SAM SCHULTZ; BRENDAN WILCZYNSKI; DAVID ANGELL; BRENNIN SHEPHERD; RYAN LEVITZ; WILLIAM MICHAELS; ERIC FLORES; JEROLD EVRARD; TIM THOMPSON; JONATHAN ROBERTSON; JESSE HARDIN; CLAY CHAMPION; RONALD WILSON; GEORGE DEEL; JAMES GENTRY; FRED LUMPKIN; TERRY MILLER; RALPH STILES; and BRIAN WANINGER, <br><br> Plaintiffs, <br> v. <br><br> KBR, INC.; KELLOGG, BROWN & ROOT SERVICES, INC.; KBR TECHNICAL SERVICES, INC.; OVERSEAS ADMINISTRATIVE SERVICES, LTD.; and SERVICE EMPLOYEES INTERNATIONAL, INC., <br><br> Defendants. | 3:08-cv-186-RLY-WGH |

**ORDER ON DEFENDANTS' MOTION TO AMEND CASE
MANAGEMENT PLAN TO ENTER A "LONE PINE" ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on Defendants' Motion to Amend Case Management Plan to Enter a "Lone Pine" Order filed September 14, 2009.  (Docket No. 105). Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Amend Case Management Plan was filed September 24, 2009 (Docket No. 107), and Defendants' Reply was filed October 5, 2009 (Docket No. 113).

**The *Lone Pine* Order in Toxic Tort Litigation**

Defendants seek the issuance of a "*Lone Pine* order."  Such orders originate from the 1986 Superior Court of New Jersey case of *Lore v. Lone Pine Corp.,* 1986 WL 637507 (N.J. Superior Law Div. Nov. 18, 1986), where the Superior Court of New Jersey approved of a pretrial order that obligated the plaintiffs in that case to provide some basic facts about their claims via expert reports or risk dismissal of their case.  *Lone Pine,* 1986 WL 637507 at *1-*3. These scheduling orders are "pre-discovery orders designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim." *Steering Committee v. Exxon Mobil Corp.,* 461 F.3d 598, 604 n.2 (5th Cir. 2006).  "The basic purpose of a *Lone Pine* order is to identify and cull potentially meritless claims and streamline litigation in complex cases." *Baker v. Chevron USA, Inc.,* 2007 WL 315346 at *1 (S.D. Ohio 2007).  *Lone Pine* orders are permitted by Rule 16(c)(2)(L) of the Federal Rules of Civil Procedure which provides that a court may take several actions during a pretrial conference,

including "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems . . . ." FED. R. CIV. P. 16(c)(2)(L).

"In crafting a Lone Pine order, a court should strive to strike a balance between efficiency and equity. Lone Pine orders may not be appropriate in every case, and even when appropriate, they may not be suitable at every stage of the litigation." *In re Vioxx Products Liability Litigation,* 557 F.Supp.2d 741, 744 (E.D. La. 2008). Typically, *Lone Pine* orders require plaintiffs to provide an affidavit by a specific date that states the following: "(1) the identity and amount of each chemical to which the plaintiff was exposed; (2) the precise disease that or illness from which the plaintiff suffers; and (3) the evidence supporting the theory that exposure to the defendant's chemicals caused the injury in question." James P. Muehlberger & Boyd S. Hoekel, *An Overview of Lone Pine Orders in Toxic Tort Litigation,* DEF. COUNS. J. 366, 366-67 (2004). "A court ordering this sort of information to be produced early in the discovery process provides a tremendous advantage to defendants wishing to dispose of frivolous claims quickly." *Id.* at 367. Hence, "[s]ome courts have entered [*Lone Pine*] orders *only* after a state or federal agency has issued a report that either provides much of the information called for in the order or undercuts the plaintiffs' claims for personal injuries." *Id.* at 370 (emphasis added).

A significant criticism of the *Lone Pine* order is that "it gives courts the means to ignore existing procedural rules and safeguards." *Simeone v. Girard*

*City Bd. of Educ.,* 872 N.E.2d 344, 350 (Ohio Ct. App. 2007). The Court of Appeals of Ohio went on to warn that "[w]hen the Lone Pine order cuts off or severely limits the litigant's right to discovery, the order closely resembles summary judgment, albeit without the safeguards that the Civil Rules of Procedure supply. Furthermore, many Lone Pine orders are inconsistently applied, which further confuses their purpose." *Id.*

**An Overview of *Lone Pine* Cases**

In the original *Lone Pine* order case, *Lore v. Lone Pine Corp.,* homeowners filed suit against the 464 operators of a nearby landfill for both personal injury and property damage allegedly sustained as a result of polluted waters from the landfill. At a pretrial conference, the court determined that plaintiffs had failed to allege a prima facie case in their complaint. Additionally, an Environmental Protection Agency report contradicted the plaintiffs' claims. As a result, with regard to plaintiffs' physical injuries, the trial court entered a case management order requiring the plaintiffs to provide documentation showing each individual plaintiff's exposure to the alleged toxic substance and reports of treating physicians/medical experts supporting each individual claim of injury and causation. After plaintiffs failed to submit expert reports and medical records to substantiate their claims of physical injuries, the plaintiffs' suit was dismissed.

In the Ohio case of *Simeone,* 13 students (and their parents) and four school workers sued following the closure of their school due to reported health problems. *Simeone,* 872 N.E.2d at 347. The court instructed the plaintiffs that

-4-

within three months of the date of the order they must: (1) identify the illness/injury claimed by each plaintiff; (2) provide the testing used to support claims of exposure; (3) provide medical expert reports that indicated that the illness/injury was caused by the exposure; and (4) provide expert reports that indicated that the illness/injury could not have occurred but for the exposure. *Id.* at 350-51. The Court of Appeals of Ohio determined that "the issuance of the Lone Pine order at the stage in the proceedings when there had yet to be any meaningful discovery, followed by the dismissal of the case with prejudice for failure to comply with the order, was an abuse of discretion in this case." *Id.* at 351. The Court of Appeals reasoned that "it is apparent that [plaintiffs] were not given the full range and benefit of discovery before the Lone Pine order was issued. In most of the Lone Pine cases we have reviewed in coming to this conclusion, the Lone Pine order was issued only after one party was refusing to comply with discovery requests or when the plaintiffs failed to set forth a prima facie claim." Id. at 352.

In *In re Vioxx*, the issue was whether or not the prescription medication Vioxx had contributed to the heart attack, sudden cardiac death, or stroke of plaintiffs. The plaintiffs contended that a *Lone Pine* order was premature for those plaintiffs who had developed thromboembolic disorders because, at the time, there had been no general causation expert reports generated on this topic. *In re Vioxx,* 557 F.Supp.2d at 742. The court cautioned that a *Lone Pine* order may not have been appropriate at the early stages of litigation "since little was

known about the structure, nature and effect of Vioxx by anyone other than perhaps the manufacturer of the drug." *Id*. at 744.  However, the court noted that in this case there were a litany of steps that have been taken over a nearly decade-long process of litigation examining the effects of Vioxx on the human body and determined that "it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that Vioxx caused them personal injury . . . ." *Id*.  The court explained that it was "not requiring that Plaintiffs provide expert reports sufficient to survive a *Daubert* challenge or even provide an expert who will testify at trial.  Rather, the Court is requiring Plaintiffs to make a minimal showing consistent with Rule 26 that there is some kind of scientific basis that Vioxx could cause the alleged injury." *Id*.

In *In re 1994 Exxon Chemical Plant Fire Litigation,* 2005 WL 6252312 (M.D. La. 2005), the plaintiffs were residents who lived nearby an Exxon Mobile Chemical Plant.  An explosion occurred at the plant which emitted hazardous and toxic chemicals allegedly resulting in the plaintiffs' injuries.  The plaintiffs' complaints did not identify the particular injury sustained by each individual plaintiff and did not indicate which chemical caused which injuries.  The defendants sought a *Lone Pine* order for the purpose of obtaining information about the plaintiffs' claims, specifically what chemicals each individual was exposed to as well as the causal link between the exposure and each individual's injuries.  *Id*. at *2.  The district court determined that, because many years had passed, the individual plaintiffs should not have had any difficulty producing

some concrete, factual basis to support their claims. The court opined that "[i]f a plaintiff is unable to do this, then the court should be concerned with the viability of the plaintiff's claims." *Id*. Therefore, the court ruled that issuance of a *Lone Pine* order was appropriate. However, the court declined to rule that failure to comply with the *Lone Pine* order would result in automatic dismissal of the plaintiffs' claims with prejudice.

In one of the few *Lone Pine* cases to actually reach the circuit court of appeals, *Acuna v. Brown & Root, Inc.,* 200 F.3d 335 (5th Cir. 2000), plaintiffs were individuals who allegedly suffered injuries (including exposure to radiation or uranium dust) as a result of uranium mining and processing. As a result of defendants' request for a *Lone Pine* order, the district court issued:

> pre-discovery scheduling orders that required plaintiffs to establish certain elements of their claims through expert affidavits. Those affidavits had to specify, for each plaintiff, the injuries or illnesses suffered by the plaintiff that were caused by the alleged uranium exposure, the materials or substances causing the injury and the facility thought to be their source, the dates or circumstances and means of exposure to the injurious materials, and the scientific and medical bases for the expert's opinions.

*Id.* at 338. In response to the *Lone Pine* order, plaintiffs submitted one generic expert report for each individual plaintiff that opined that there were a series of illnesses and effects that can occur from uranium exposure and that each plaintiff suffered from some or all of these illnesses, and that the individual plaintiffs had suffered from significant doses of exposure to uranium. Additionally the expert report explained that all defendants' mining facilities

-7-

were responsible for each plaintiff's exposure.  *Id.*  The district court determined that these expert reports were insufficient, ordered further compliance on behalf of the plaintiffs, and after it was unsatisfied with the additional reports, the district court dismissed the plaintiffs' claims.  The Fifth Circuit ruled that the district court had not committed clear error or an abuse of discretion explaining that:

> [T]here are approximately one thousand six hundred plaintiffs suing over one hundred defendants for a range of injuries occurring over a span of up to forty years.  Neither the defendants nor the court was on notice from plaintiffs' pleadings as to how many instances of which diseases were being claimed as injuries or which facilities were alleged to have caused those injuries.  It was within the court's discretion to take steps to manage the complex and potentially very burdensome discovery that the cases would require.
>
> The scheduling orders issued below essentially required that information which plaintiffs should have had before filing their claims pursuant to Fed.R.Civ.P. 11(b)(3).  Each plaintiff should have had at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries.  The affidavits supplied by plaintiffs did not provide this information.

*Id.* at 340 (citations omitted).

Finally, an earlier state-court *Lone Pine* case, *Kinnick v. Schierl, Inc.,* 541 N.W.2d 803 (Wisc. Ct. App. 1995), involved a suit against several defendants alleging that they were responsible for contaminating the plaintiffs' water wells.  This case is unique in that *the plaintiffs* were the ones who actually wanted a *Lone Pine* order.  There was already some expert testimony in the record that provided evidence that there were "possible" routes that existed that could have

provided for the migration of contaminants from defendants' property to plaintiffs' properties. *Id.* at 805. However, defendants filed a motion for summary judgment alleging that plaintiffs needed an expert witness to testify that there was a reasonable degree of certainty that the contaminants had, in fact, migrated from defendants' property to plaintiffs' property; the trial court granted summary judgment. *Id.* Plaintiffs argued that there were still six months remaining until the close of discovery, that summary judgment was premature and that it took away their opportunity to develop more expert testimony on causation, and that the least the court could do was issue a *Lone Pine* order giving them some more time to develop an expert witness on causation. The Wisconsin Court of Appeals ruled that enough time for expert discovery had already passed and whether or not plaintiffs would be able to obtain additional expert testimony on causation was too speculative; therefore, the trial court did not abuse its discretion in granting summary judgment and refusing to issue a *Lone Pine* order.

**Defendants' Request for a *Lone Pine* Order**

In this case, Defendants seek the issuance of a *Lone Pine* order requiring "each Plaintiff to produce scientifically reliable, prima facie evidence of (1) the dose and duration of his alleged exposure to sodium dichromate, (2) his injury(ies) and (3) the causal relationship between his exposure and his alleged injury(ies)." (Defendants' Motion to Amend Case Management Plan to Enter a "Lone Pine" Order at 2-3). Plaintiffs argue in their response that they will

already be issuing expert reports in November that are subject to *Daubert* challenges and that requiring them to issue *Lone Pine* reports would be duplicative.  (*See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Amend Case Management Plan).  Defendants contend in their reply that a *Lone Pine* order requires far more than what is required in an expert report.

A review of the cases and commentaries described above leads this Magistrate Judge to believe that a *Lone Pine* order can in some cases be a useful **case management tool;** however, it should not be considered a substitute for or another species of a **motion for summary judgment.**  If a *Lone Pine* order is to be entered, it should be structured in a manner that assists the parties in focusing and narrowing areas where further discovery is needed.  Failure to produce–at an early stage of the lawsuit–sufficient evidence of exposure or causation cannot result in automatic dismissal of claims without the protections a proper response to a motion for summary judgment under Federal Rule of Civil Procedure 56 provides.

A *Lone Pine* order should issue only in an exceptional case and after the defendant has made a clear showing of significant evidence calling into question the plaintiffs' ability to bring forward necessary medical causation and other scientific information.  In this case, the USACHPPM report brought forward by the defendants contains a medical evaluation of 137 of 161 potentially exposed Indiana Guardsmen and civilians at the plant.  While ultimately a jury may be

required to evaluate whether the tests were properly performed, on their face the results of Plaintiffs' blood tests do not detect any significant levels of hexavalent chromium. (Specifically, the report states: "Results of the total chromium blood tests . . . were marginally above, at, or below the detection limit of the test method.") In the material provided to the court to date, no evidence establishes that the tests were not the correct tests necessary to measure exposure or that the tests were not properly performed. In fact, in a review by the Defense Health Board specifically to address the adequacy of the action taken, the Secretary of the Army's designee does not identify any other methods of detecting exposure which could have been, but were not employed. The Affidavit of Dr. Gibbs attached as Exhibit D contains opinions, but does not point to specific defects in the blood test methodology which call the accuracy of the results into question.

In light of the posture of the case, the Magistrate Judge concludes that, in order to promote efficiency in the resolution of the case, an order on Plaintiffs' FED. R. CIV. P. 26(b) expert disclosures should issue directing Plaintiffs to provide expert disclosures in the three areas of inquiry defendants requested (exposure, injury, and causation). Specifically, as a part of its expert disclosures, Plaintiffs' experts shall identify what evidence in the form of medical findings or test results establish–for each plaintiff–that a detectable amount of sodium dichromate has been found in blood or tissue samples. Absent evidence of a detectable amount of that substance within blood or tissue samples, Plaintiffs' expert shall address how a judge or jury can conclude that any medical

conditions allegedly sustained by Plaintiffs can be said to have been caused by exposure to the chemical at issue.

Plaintiffs' expert disclosures shall be filed according to the current schedule. Failure to address the causation issue will not be grounds for immediate dismissal of the claims. However, failure to make such a disclosure, combined with an ultimate granting of summary judgment on that basis, may cause the court to consider whether Plaintiffs should bear the costs and attorney fees incurred by Defendants arising out of the necessity of filing such a motion.

In conclusion, Defendants' Motion to Amend Case Management Plan to Enter a "Lone Pine" Order is **GRANTED, in part,** and **DENIED, in part.**

**SO ORDERED.**

**Dated:** November 20, 2009

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

David J. Cutshaw
COHEN & MALAD LLP
dcutshaw@cohenandmalad.com

Michael Patrick Doyle
DOYLE RAIZNER LLP
mdoyle@doyleraizner.com

Gabriel Adam Hawkins
COHEN & MALAD LLP
ghawkins@cohenandmalad.com

Randall Jones
SERPE JONES ANDREWS CALLENDER
 & BELL PLLC
rjones@serpejones.com

Gregory L. Laker
COHEN & MALAD LLP
glaker@cohenandmalad.com

Christopher D. Lee
KAHN DEES DONOVAN & KAHN
clee@k2d2.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Thomas Eugene Mixdorf
ICE MILLER LLP
thomas.mixdorf@icemiller.com

Phillip R. Scaletta
ICE MILLER
scaletta@icemiller.com

Donald M. Snemis
ICE MILLER LLP
donald.snemis@icemiller.com

Seth M. Thomas
ICE MILLER LLP
seth.thomas@icemiller.com