IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| MARK McMANAWAY; DAVID RANCOURT; BRENT LASHER; JODY AISTROP; WILLIAM EARL BICKELL; MATTHEW DALE BOARD; LARRY BUNNER; WILLIAM DeLASHMUTT; JEFFREY FROMME; JEFFERY HENKE; ANTHONY HUFF; BEN McINTYRE; JEFFREY ALAN VARNER; TOMMY J. EBERT, JR; LUCAS RAY WHISTLE; MICAH PARTLOW; JURGEN P. TURNER, JR; RUSSELL KIMBERLING; SCOTT WYATT; GARY FISCHL; STEPHEN SALAMONE; RUSSELL GARVIN; DANIEL KRIBS; DAVID BARKER; EDWARD BOSA; STEVE MOORE on behalf of the wrongful death Estate of DAVID MOORE; JASON BREEDEN; CLINTON HAMMACK; SAM SCHULTZ, BRENDAN WILCZYNSKI; DAVID ANGELL; BRENNIN SHEPHERD; RYAN LEVITZ; WILLIAM MICHAELS; ERIC FLORES; JEROLD EVRARD; TIM THOMPSON; JONATHAN ROBERTSON; JESSE HARDIN; CLAY CHAMPION; RONALD WILSON; GEORGE DEEL; JAMES GENTRY; FRED LUMPKIN; TERRY MILLER; RALPH STILES; and BRIAN WANINGER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| v. | )  Cause No. 3:08-cv-0186-RLY-WGH |
| KBR, INC.; KELLOGG, BROWN & ROOT SERVICES INC.;  KBR TECHNICAL SERVICES, INC.; OVERSEAS ADMINISTRATIVE SERVICES, LTD.; and SERVICE EMPLOYEES INTERNATIONAL, INC. | ) ) ) ) ) ) ) )   JURY DEMANDED |

**BRIEF IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

KBR, Inc. ("KBR"), Kellogg, Brown & Root Services, Inc. ("Kellogg"), KBR Technical

Services, Inc. ("KBR Technical"), Overseas Administration Services, Ltd. ("OAS") and Service

Employees International, Inc. ("SEI") (collectively "Defendants"), by counsel, move the Court

for an award of attorney's fees pursuant to 28 U.S.C. §1927, Ind. Code §34-52-1-1(b) and the Court's inherent power to control litigation pending before it.[1] In support thereof, Defendants submit this brief.

## I. BACKGROUND

Plaintiffs filed their initial Complaint in the Southern District of Indiana on December 3, 2008. (Dckt. 1). Plaintiffs alleged that the principal place of business of KBR, Kellogg and KBR Technical is in Texas, and that OAS and SEI are managed from Texas. (Dckt. 1, ¶¶ 2.2, 2.3, 2.4, 2.6 and 2.7). A few weeks later, Defendants asserted that this Court lacked personal jurisdiction over them. (Dckt. 25, p. 7). In January of 2009, counsel for the Plaintiffs[2] discussed the issue of personal jurisdiction with counsel for Defendants. During that discussion, counsel for Plaintiffs claimed that the Defendants were all registered to do business in Indiana, argued that such registration proved the existence of personal jurisdiction and asked Defendants' counsel to withdraw Defendants' personal jurisdiction defense. (Exhibit 1, letter of January 19, 2009). Defendants' counsel declined, pointing out that (a) only two of the five Defendants were registered to do business in Indiana and (b) controlling precedent in the Fifth and Seventh Circuits held that registering to do business in a state does not, by itself, confer personal jurisdiction. (Exhibits 2 and 3, letters of January 27 and February 10, 2009). Defendants' counsel then demanded that the Plaintiffs voluntarily dismiss their lawsuit due to this Court's lack of personal jurisdiction over the Defendants. (Exhibit 3).

Having received no dismissal, Defendants filed their Motion to Dismiss for Lack of Jurisdiction on March 23, 2009. (Dckt. 58). While that motion was pending, Plaintiffs filed several amended Complaints and Defendants renewed their Motion each time. (Dckt. 94, 96,

---

[1] Defendants are also filing a separate Bill of Costs per Fed. R. Civ. Proc. 54(d)(1).
[2] Lead counsel for Plaintiffs are Michael P. Doyle and Jeffrey L. Raizner of Doyle Raizner LLP, with offices in Houston and Galveston, Texas.

102, 109 and 111).  The Court granted the Defendants' Motion to Dismiss on February 25, 2010, citing lack of personal jurisdiction, and entered final judgment in favor of the Defendants on March 2, 2010.  (Dckt. 127, 128).

## II.  ANALYSIS

A.     Grounds for an Award of Fees

Under 28 U.S.C. §1927, "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct."  The point of this statute is simple:  it permits a court to transfer any award of fees from a client to the offending lawyer.  *In re TCI Limited*, 769 F.2d 441 (7th Cir. 1985).

§1927 has an objective component.  Extreme negligence, such as reckless and indifferent conduct, satisfies this standard.  *Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005), *reh'g denied, cert. dismissed* 546 U.S. 1162 (2006)*;  Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184-5 (7th Cir. 1992)*.*  Cases in which the Seventh Circuit has upheld awards under §1927 included situations in which counsel acted recklessly, raised baseless claims despite notice of their frivolous nature or otherwise showed indifference to statutes, rules, or court orders.  *Claiborne*, 414 F.3d at 721.;   *Kotsilieris*, 966 F.2d at 1184-5.   The key point is the objective unreasonableness of the attorney's actions, not the absence of bad faith or evil intent.  *Claiborne*, 414 F.3d at 721;  *Walter v. Fiorenzo,* 840 F.2d 427, 433 (7th Cir. 1988);  *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir. 1984).  Thus, if a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.  *In re TCI Limited,* 769 F.2d at 445.  Liability for fees under §1927 is "demonstrated by subjective evidence of malice, objective evidence of

recklessness, or evidence showing indifference to statutes, rules or court orders." *Ward v. Tipton County Sheriff's Department,* 937 F.Supp. 791 (S.D. Ind. 1996).

Ind. Code § 34-52-1-1(b) also allows the court to award attorney's fees as part of the cost to the prevailing party if the court finds that a party "brought the action … on a claim … that is frivolous, unreasonable, or groundless," "continued to litigate the action … after the party's claim … clearly became frivolous, unreasonable or groundless," or "litigated in bad faith." Ind. Code § 34-52-1-1(b)(1)-(3); *Dempsey v. JP Morgan Chase Bank, N.A.*, 272 Fed.Appx. 499, 504 (7th Cir. 2008). Under this statute, a claim is "frivolous" if counsel is unable to make a good faith and rational argument on the merits of the action, or in favor of an extension, modification or reversal of existing law. *Emergency Physicians of Indpls. V. Pettit*, 714 N.E.2d 1111, 1115 (Ind.Ct.App. 1999), *trans. granted, adopted in relevant part and vacated in part on other grounds,* 718 N.E.2d 753, 757 (Ind. 1999). A claim is "unreasonable" if no reasonable attorney would consider it worthy of litigation. *Id.* A claim is "groundless" if no facts exist to support it. *Id.*

Finally, the court retains inherent power to impose sanctions when the situation is grave enough to call for them and the misconduct has somehow slipped between the cracks of the statutes and rules covering the usual situations. *Claiborne*, 414 F.3d at 724. Sanctions can be imposed pursuant to the court's inherent powers if the court finds that a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. Nasco*, 501 U.S. 32, 33 (1991), *reh'g denied* 501 U.S. 1269 (1991); *Stive v. United States*, 366 F.3d 520, 521-2 (7th Cir. 2004). An award of sanctions is appropriate where a Plaintiff knowingly files a lawsuit in the wrong forum. *Methode Electronics, Incorporated, v. Adam Technologies,* 371 F.3d 923, 927-8 (7th Cir. 2004).

B.        <u>Plaintiffs' Conduct Warrants Sanctions in the Form of Attorney's Fees.</u>

        1.        <u>General Jurisdiction Claims</u>

Plaintiffs pressed two theories of personal jurisdiction. First, Plaintiffs alleged that the Defendants were subject to general jurisdiction because they had sufficient "minimum contacts" with the State of Indiana to support such a finding. In support of that argument, Plaintiffs pointed to the following facts: (a) some of the Defendants are registered to do business in Indiana; (b) although they do no work in Indiana, some of the Defendants' employees reside in Indiana; (c) two of the Defendants had small contracts at Camp Atterbury and Grissom Air Force Base; (d) Defendants had a recruiting website; and (e) personal jurisdiction should be imputed to KBR because it is the parent of the other Defendants. (Dckt. 72, pp. 19-21).

Defendants argued that each Defendants' contacts had to be determined on an individual basis, and this Court's Order did so. First, the Court pointed out that binding Seventh Circuit precedent held that the act of registering to do business in a state does not, standing alone, satisfy due process. (Dckt. 127, p. 17). In fact, this Court cited *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239 (7th Cir. 1990), *cert. denied* 499 U.S. 947 (1991) in its order, the very the same case cited by Defendants' counsel to Plaintiffs' counsel for the same proposition a year earlier. (Exhibit 3). Second, the Court noted that the fact that some of the Defendants' employees resided in Indiana was "merely fortuitous." (Dckt. 127, p. 18).

Third, the Court reviewed KBR Technical's contracts at Grissom and Atterbury and held that even viewed collectively, these contacts were not continuous and systematic, as required to satisfy Due Process. *Id.* at 19. Fourth, regarding Plaintiffs' claims that Defendants maintained a recruiting website, this Court found that the Plaintiffs presented "no evidence beyond asserting that the Defendants have a recruiting website," which was clearly not sufficient. *Id.,* at 18-19.

Fifth, regarding Plaintiffs argument that personal jurisdiction should be imputed to KBR as the parent of the other Defendants, the Court held that Plaintiffs' arguments were merely conclusory and fell short of overcoming the presumption of independence. *Id.* at 20. As to the remaining allegations, the Court found that these were "not of the quality or quantity necessary to enable the court to exercise general jurisdiction." *Id.* at 18.

Plaintiffs' theory of general jurisdiction was flawed, frivolous and unsupported by the facts and law from the beginning, and Defendants' counsel pointed this out immediately. It is now clear that Plaintiffs did not investigate or analyze the facts prior to filing suit, and simply attempted to manufacture a jurisdictional claim from the results of their discovery efforts. A reasonable attorney would have researched the facts and law prior to suit, and chosen the correct jurisdiction prior to filing. At a bare minimum, a reasonable attorney would have reviewed the record and binding Seventh Circuit precedent once a jurisdictional defense was raised by the Defendants and their counsel, conceded lack of personal jurisdiction, and then would have sought either a voluntary dismissal with permission to refile in another jurisdiction or a transfer to a court that had personal jurisdiction over these Defendants. Plaintiffs' counsel failed to do so, causing Defendants to endure over a year of needless litigation and incur substantial attorney's fees. As such, Defendants ask the Court to shift the burden of fees related to jurisdictional issues to the Plaintiffs and their counsel.

    2.    <u>Specific Jurisdiction Claims</u>

Plaintiffs' Complaint contains no reference to a theory of specific jurisdiction. In correspondence between counsel, Plaintiffs' counsel did not allege that Plaintiffs were relying upon a specific jurisdiction theory. (Exhibit 1). However, after the Defendants filed their Motion To Dismiss, Plaintiffs sought and received permission to add allegations of intentional

torts to their Complaint. (Dckt. 71).[3] Around the same time, Plaintiffs filed their response to the Motion to Dismiss, relying upon the "effects test" of *Calder v. Jones,* 465 U.S. 783 (1984). However, as Defendants pointed out in their Objection to the Motion to Amend, the *Calder* "effects test" only applies to intentional torts, which of course is why Plaintiffs belatedly sought to add such claims to their Complaint. (Dckt. 73). This Court specifically noted the necessity of "intentionally tortious actions" in its Order granting the dismissal, and pointed to Plaintiffs' claims of fraud and intentional infliction of emotional distress as meeting that requirement. (Dckt. 127, p. 13).

As it turns out, Plaintiffs *Calder* theory failed anyway. The *Calder* "effects test" requires that the Defendants intentional tortious conduct be targeted directly at a particular jurisdiction. *Id.*, at 14. This Court rejected such a finding, calling Plaintiffs' argument "too tenuous" to support a finding of *Calder* jurisdiction because Defendants' alleged conduct applied to anyone who visited Qarmat Ali, regardless of where they were from or where they were going. *Id.* at 14-15. That point would have been obvious to any reasonable attorney reading the *Calder* decision.

    3.    <u>Plaintiffs' Forum Shopping Should Not Be Tolerated.</u>

The motive for filing in Indiana is clear: counsel was forum shopping and seeking to burden the Defendants with as much litigation expense as possible to gain tactical advantage. Attorneys Raizner and Doyle are pursuing these same claims for Oregon National Guardsmen in the District of Oregon (*Bixby et al. v. KBR, Inc., et al.* case no. 3:09-cv-00632) and for West Virginia National Guardsmen in the Northern District of West Virginia (*Galleher et al. v. KBR, Inc., et al*, case no. 5:09-cv-00069). Plaintiffs hoped that they would all enjoy a "home court" advantage. An Indiana jury would resolve the claims of Indiana Guardsmen against companies

---

[3] The intentional torts asserted included fraud and intentional infliction of emotional distress, both of which are ill-fitting legal theories given the facts of this case.

with little or no presence in Indiana, and likewise for the Oregon and West Virginia Guardsmen. Why else would Texas lawyers file three separate lawsuits against Texas Defendants in Indiana, Oregon and West Virginia, rather than a single case in Texas?

By filing three different lawsuits in three different federal courts, Plaintiffs' counsel tripled the fees and costs to be incurred by the Defendants (and tripled the workload of the federal judiciary). The Defendants have been required to defend this case in Indiana, a state in which it does not reside or do significant business, for fifteen (15) months. The resulting pressure on the Defendants is significant.

Forum shopping and gamesmanship of this type should be strongly discouraged, and when it is done in complete disregard of the law and the Defendants' Constitutional Due Process rights, the burden of the resulting fees should be shifted. 28 U.S.C. §1927, Ind. Code § 34-52-1-1(b) and this Court's inherent powers provide sufficient authority to do so.

### III.  ATTORNEY'S FEES SOUGHT

Defendants do not seek all of their attorney's fees. Rather, Defendants seek only those fees associated with its Motions to Dismiss, related briefing and jurisdictional discovery. Attached hereto is the Affidavit of Celia Balli, which summarizes all such fees and contains a redacted copy of invoices from its counsel.[4]

### IV.  CONCLUSION AND RELIEF SOUGHT

Plaintiffs did not file or pursue their jurisdictional theories reasonably or in good faith. Rather, their motive were to shop for a favorable forum and unnecessarily increase the Defendants' litigation expenses to gain tactical advantage. This conduct was reckless, done for improper purposes (forum shopping and gamesmanship) and was pursued with complete

---

[4] Some of the electronic research charges reflected in the attachments to Celia Balli's Affidavit are also contained within the Bill of Costs being submitted by the Defendants. To the extent those are allowed as costs, and this motion is granted, they should be deducted so as to avoid double counting.

indifference to the facts and law. This situation is appropriate for shifting a portion of the Defendants' fees to the Plaintiffs and their counsel.

        Respectfully submitted,

        ICE MILLER LLP

        */s/ Donald M. Snemis*
        Phillip R. Scaletta
        Phillip.Scaletta@icemiller.com
        Donald M. Snemis
        Donald.Snemis@icemiller.com
        Thomas E. Mixdorf
        Thomas.Mixdorf@icemiller.com
        Seth M. Thomas
        Seth.Thomas@icemiller.com
        ICE MILLER LLP
        One American Square, Suite 2900
        Indianapolis, Indiana 46282-0200
        (317) 236-2100

        M. Randall Jones *(admitted pro hac vice)*
        rjones@serpejones.com
        SERPE, JONES, ANDREWS, CALLENDER &
        BELL, PLLC
        Three Allen Center
        333 Clay Street, Suite 3485
        Houston, Texas 77002
        (713) 452-4400

        *Counsel for Defendants KBR, Inc., Kellogg Brown & Root Services, Inc., KBR Technical Services, Inc., Overseas Administration Services, Ltd. and Service Employees International, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served this 16th day of March, 2010, via the ECF filing system, to the following counsel of record:

| | |
|---|---|
| David J. Cutshaw<br>dcutshaw@cohenandmalad.com<br>Gregory L. Laker<br>glaker@cohenandmalad.com<br>Gabriel A. Hawkins<br>ghawkins@cohenandmalad.com<br>COHEN & MALAD, LLP<br>One Indiana Square, Suite 1400<br>Indianapolis, IN  46204 | Jeffrey L. Raizner<br>jraizner@DoyleRaizner.com<br>Michael Patrick Doyle<br>mdoyle@DoyleRaizner.com<br>Patrick M. Dennis<br>pdennis@DoyleRaizner.com<br>DOYLE RAIZNER LLP<br>One Houston Center<br>1221 McKinney, Suite 4100<br>Houston, TX  77010 |

Christopher D. Lee
clee@kddk.com
KAHN, DEES, DONOVAN & KAHN, LLP
501 Main Street, Suite 305
Evansville, IN  47708

                                                /s/ *Donald M. Snemis*
                                                Donald M. Snemis

ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, Indiana 46282-0200
(317) 236-2100

I/2448705.1